UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEVERLY OWENS-FLOYD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 3182 |
| v. ) | |
| ) | Judge George M. Marovich |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Beverly Owens-Floyd ("Owens-Floyd") filed a three-count amended complaint

against the City of Chicago (the "City") asserting claims under Title VII of the Civil Rights Acts

of 1964 and the Age Discrimination in Employment Act ("ADEA"). The City moves for

summary judgment on all of plaintiff's claims. For the reasons set forth below, the Court grants

in part and denies in part defendant's motion for summary judgment.

## I.    Background

The following facts are undisputed unless otherwise noted.[1]

---

[1]Local Rule 56.1 outlines the requirements for the introduction of facts parties would like
considered in connection with a motion for summary judgment. The Court enforces Local Rule
56.1 strictly. Where one party supports a fact with admissible evidence and the other party
denies the fact without citation to admissible evidence, the Court deems the fact admitted. *See
Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). Asserted
"facts" not supported by deposition testimony, documents, affidavits or other evidence
admissible for summary judgment purposes are not considered by the Court. Fed. R. Civ. P.
56(c).
    Defendant asserts a foundation objection to certain statements made by plaintiff in her
deposition. The Federal Rules of Evidence require foundation for testimony. Rule 602 of the
Federal Rules of Evidence provides that a "witness may not testify to a matter unless evidence is
introduced sufficient to support a finding that the witness has personal knowledge of the matter."
*See* Fed. R. Evid. 602. Thus, a statement that a witness knows something, without statements
about *how* the witness knows that something, is not admissible. *See Ward v. First Federal
Savings Bank*, 173 F.3d 611, 618 (7th Cir. 1999); *Drake v. 3M*, 134 F.3d 878, 887 (7th Cir.

Plaintiff Beverly Owens-Floyd has been employed by the City of Chicago since 1985. For the first seven years of her employment, Owens-Floyd worked as pharmacy technician in the City of Chicago's Department of Public Health. From 1992 to approximately 2000, Owens-Floyd held the title Clerk III with the Department of Public Health. Owens-Floyd was promoted to her current position–Clerk IV–in January 2001 as a result of a "desk audit." As a Clerk IV, Owens-Floyd is responsible for, among other things, entering data, completing various tasks assigned by her supervisor and working with the STD, HIV and AIDS programs.

A "desk audit" (the method by which Owens-Floyd received her promotion to Clerk IV) is an analysis of an employee's actual work and duties and is used by the City of Chicago to determine whether an employee's work and duties are consistent with the employee's title and pay grade. An employee of the Department of Health may ask his or her supervisor for a desk audit. The supervisor has the discretion to approve or deny the request for a desk audit. If the request is approved, a Personnel Analyst from the Department of Human Resources reviews the employee's work by sitting with the employee as s/he works. The Department of Human Resources then makes a recommendation to the supervisor as to whether the employee's position is in the proper class and grade, should be reclassified laterally, should be reclassified to a higher level or should be reclassified to a lower level.

At some point between the years 2002 and 2004, Owens-Floyd asked her supervisor, Janice Johnson ("Johnson") for another desk audit. The reason Owens-Floyd requested a desk audit was that she felt that she was performing tasks outside of her grade. Specifically, Owens-Floyd believed she was performing the work of a Communicable Disease Investigator II

---

1998). The Court has ignored statements that lacked foundation.

("CDCI-II"). Johnson declined Owens-Floyd's request for a desk audit. Owens-Floyd testified that the primary reason why Johnson declined Owens-Floyd's request was that Johnson did not like her. Owens-Floyd also testified that when she requested a desk audit, Johnson told her that she could find a younger person to do Owens-Floyd's job. (The record does not reflect Owens-Floyd's age, but defendant seems to concede that she was over the age of forty during the relevant time period.)

During roughly 2002-2004, two or three CDCI-II positions were available at the Department of Public Health. Owens-Floyd did not apply for any of those positions. She testified that the positions were filled with individuals younger than she.

In March 2004, Owens-Floyd's supervisors required her to work on files that were located in the basement of the building in which she worked. In addition to files, the basement contained spiders, mice and water bugs.

On March 30, 2004, Owens-Floyd filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination. In the charge, Owens-Floyd alleged that the City of Chicago had discriminated against her in violation of the Age Discrimination in Employment Act by hiring and promoting only individuals under the age of 40. She also alleged that the City had violated Title VII of the Civil Rights Act of 1964 by retaliating against her for earlier complaints and grievances she filed against the City.

At some point, the timing of which is not made clear in the record, Johnson called Owens-Floyd into her office. Johnson told Owens-Floyd to stop filing charges. Johnson also asked Owens-Floyd why she did not stop filing charges. Charmaine Murry, another City of Chicago employee, told Owens-Floyd that she should drop her charges.

On June 7, 2004, the City transferred Owens-Floyd from its 530 E. 31st Street location to its 333 S. State Street location. Owens-Floyd remained a Clerk IV, and the transfer did not affect her salary, benefits or seniority. Owens-Floyd did not want the transfer, however, because she wanted to be closer to her son, who she felt was being recruited by a gang. Owens-Floyd also felt that she sometimes had less than enough work to do at the new location. Owens-Floyd has put forth undisputed evidence that she was told she was being transferred because the position at 530 E. 31st Street was being eliminated. The City says that it transferred Owens-Floyd because it "balanced its operational needs among its various locations."

On October 8, 2004, Owens-Floyd filed with the EEOC a second charge of discrimination. This time, she alleged that the City retaliated against her for filing her earlier charge of discrimination and discriminated against her on the basis of her age.

## II.    Standard on a motion for summary judgment

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a

verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.   Discussion

### A.   Plaintiff's ADEA claim

In Count II, Owens-Floyd alleges that she was discriminated against on the basis of her age when defendant denied her request for a desk audit and failed to promote her to the position of CDCI-II.

The Age Discrimination in Employment Act makes it "unlawful for an employer–(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  *See* 29 U.S.C. § 623(a)(1).  To be actionable, a difference in treatment must be material.  *Minor v. Centorcor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006).  "[M]any day-to-day travails and disappointments that, although frustrating, are not so central to the employment relation that they amount to discriminatory terms or conditions" are not actionable.  *Minor*, 457 F.3d at 634; *see also Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.  Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'") (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).

Plaintiff first argues that defendant violated the ADEA by refusing to grant her request for a desk audit.  Owens-Floyd has failed to put forth evidence from which a reasonable jury could conclude that such a denial amounted to a material alteration of the terms and conditions

of her employment. In a desk audit, a human resources representative shadows an employee to determine whether the work the employee actually performs is consistent with that employee's title and job grade. If it is not, the employee's title and job grade could be increased or decreased to make them consistent with the actual duties. In 2001, for example, Owens-Floyd was promoted to the position of Clerk IV as a result of a desk audit. In this case, however, Owens-Floyd has failed to put forth evidence that denying her a desk audit was material, because she has put forth no evidence that a desk audit would have resulted in a promotion. She has not, for example, put forth any evidence as to the duties of the position she thought she should be given as a result of a desk audit. Nor has she put forth evidence of the duties that she was actually performing. Accordingly, Owens-Floyd cannot survive summary judgment with respect to the claim that she was denied a desk audit in violation of the ADEA.

Owens-Floyd also claims that defendant violated the ADEA by failing to promote her to the position of CDCI-II. To establish a *prima facie* case that defendant discriminatorily failed to promote her, Owens-Floyd must show that: "(1) she is a member of a protected class; (2) she is qualified for the position; (3) she was rejected for the position sought; and (4) the position was granted to a person outside the protected class who is similarly situated or less qualified than [plaintiff]."

Plaintiff fails to make out a *prima facie* case of discrimination with respect to defendant's failure to promote her to a CDCI-II position. First, Owens-Floyd admits that she never *applied* for a position, such that it is necessarily the case that her application was never rejected. Furthermore, plaintiff fails to put forth evidence that the individuals (whom she does not name)

who received the positions were younger and similarly-situated.  Accordingly, plaintiff has failed to put forth sufficient evidence to survive summary judgment on her ADEA claim.

Defendant is entitled to judgment as a matter of law on plaintiff's ADEA claim, and the Court grants defendant's motion for summary judgment with respect to Count II.

### B.    Plaintiff's retaliation claim

In Counts I and III, Owens-Floyd asserts that defendant violated Title VII by retaliating against her.  In Count I, Owens-Floyd asserts that she was retaliated against when defendant required her to work on files in a basement with spiders, mice and water bugs.  In Count III, Owens-Floyd asserts that she was retaliated against when defendant transferred her to a different location.

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . ."  42 U.S.C. § 2000e-3(a).  To survive summary judgment on her retaliation claim via the direct method, plaintiff must show that she engaged in protected activity, that defendant subjected her to a materially-adverse action and that the two events had a causal connection.  *Lang v. Illinois Dep't of Children & Family Services*, 361 F.3d 416, 418 (7th Cir. 2003).  The defendant does not challenge plaintiff's assertion that she engaged in protected conduct.

As for the second element–a materially-adverse action–Title VII's anti-retaliation provision is broader than its disparate treatment provision, and the protection of the anti-retaliation provision extends "beyond workplace and employment-related retaliatory acts and harm."  *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 2414 (2006).  In

order to establish actionable retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern*, 126 S.Ct. at 2415. Trivial harms and petty slights will not suffice. *Id.* The Supreme Court also emphasized that the standard is objective but that it must be considered within the particular circumstances. As the Supreme Court explained, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children." *Burlington Northern*, 126 S.Ct. at 2415.

Here, plaintiff seems to allege two retaliatory acts on the part of defendant: her transfer to the 333 S. State facility and her supervisor's request that she work files in the basement. The latter is the sort of trivial slight that is not actionable. Accordingly, the defendant is entitled to summary judgment on Count I. The transfer is a closer call. It is true, as defendant points out, that a transfer that lengthens a commute is generally not considered a change in the *terms and conditions* of employment and, as such, is not actionable disparate treatment. *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). But the anti-retaliation provision is broader and covers more than just changes to the terms and conditions of employment. Given the distance between the two locations, the transfer between the 530 E. 31st Street location and the 333 S. State Street location could have added an hour to plaintiff's daily commute. Given that plaintiff was worried about being further away from her son, a reasonable jury could find that the transfer could dissuade a reasonable worker from making or supporting a charge of discrimination.

With respect to the third element–a causal connection–plaintiff may rely on direct evidence or circumstantial evidence. *Lang*, 361 F.3d at 419. Although temporal proximity alone is usually not enough circumstantial evidence to survive summary judgment, "the timing of events is often an important evidentiary ally to the plaintiff." *Lang*, 361 F.3d at 419 (quoting *Lalvani v. Cook Cty.*, 269 F.3d 785, 790 (7th Cir. 2001)). The Seventh Circuit has explained that "[c]lose temporal proximity provides evidence of causation, and may permit a plaintiff to survive summary judgment provided that there is also other evidence that supports the inference of a causal link." *Lang*, 361 F.3d at 419. In *Holt v. Marion Comm. Schools*, for example, the plaintiff survived summary judgment on a retaliation claim by putting forth evidence that her employment was terminated two months after she engaged in protected conduct and that her supervisor had told her she was "putting her job in jeopardy" by complaining. *Holt v. Marion Comm. Schools*, Case No. 06-cv-210, 2007 WL 3036892 at *8 (N.D. Ind. Oct. 15, 2007).

In this case, plaintiff has put forth sufficient evidence from which a jury could conclude that the City retaliated against her for filing a charge of discrimination. The strongest piece of evidence is the suspicious timing. Plaintiff filed her charge of discrimination on March 30, 2004. On June 7, 2004, barely two months later, plaintiff was transferred. Although the proximity evidence alone might not be enough to get her past a motion for summary judgment, plaintiff offered more. Plaintiff put forth evidence that Johnson, plaintiff's supervisor, called plaintiff into her office and not only asked her why she did not stop filing charges but also told her to stop filing charges. If a jury believed plaintiff's testimony that her supervisor discouraged the filing of charges, the jury could reasonably conclude from that evidence and the evidence of temporal proximity that plaintiff was unlawfully retaliated against. Accordingly, plaintiff has

put forth sufficient evidence to survive summary judgment on her claim that she was retaliated against when the City of Chicago transferred her.

**IV.** **<u>Conclusion</u>**

For the reasons set forth above, the Court grants in part and denies in part the City's motion for summary judgment. The Court grants defendant summary judgment on Counts I and II. The Court denies defendant's motion for summary judgment as to Count III.

This case is set for status on December 18, 2007 at 2:00 p.m.

ENTER:

George M. Marovich
United States District Judge

DATED: December 11, 2007